Good afternoon. Illinois Appellate Court First District Court is now in session. The Sixth Division, the Honorable Justice Sanjay T. Taylor presiding. Case number 23-0629, Amanda Knight v. Robert Knight. Good afternoon. My name is Sanjay Taylor, the presiding judge of the Sixth Division, the First District Appellate Court. I'm joined this afternoon by my colleagues, Justice Michael Hyman and Justice Celia Gamrat. If I can ask counsel for both sides to introduce themselves and tell us who you're representing and how much, for the appellant, how much time you care to reserve for rebuttal. Good afternoon. Good afternoon, Your Honor. Jason Adas and Jennifer Cantrell, Peter Niko on behalf of Amanda Albert, who's present this afternoon. And I'd like to reserve 10 minutes for rebuttal. Okay. And just so you know, you have 20 minutes in total. And so 10 of those minutes you wish to reserve for rebuttal. So I'd like to reduce that to five minutes, please. Thank you. And counsel for the appellee. Good afternoon. Mark Janser on behalf of Robert Knight, joined in this room with Victoria Masciapinto and by the appellee, Rob Knight. Okay. Good afternoon. Okay. Mr. Adas, when you're ready. If it pleases the court, Amanda Alpert filed a motion to modify the child support provisions of the party's marital settlement agreement on October 4th, 2021, based upon a substantial change in the circumstances of her husband, specifically. We know the briefs and the record and know the arguments. No, please, Judge. I'm sorry. You know, you make a series of arguments on different issues. What do you think is your strongest argument? I think that's a strong, so strong. Well, the strongest argument, because a modification is a two-step process. The first is that we must prove that there was a substantial change in circumstances and the failure to find that substantial change was against the manifest weight of the evidence. And it's our position that the marital settlement agreement in this case, which should be reviewed de novo because it's contract interpretation, does not provide anything within it that would demonstrate that there was any contemplated events that would prohibit a finding of a substantial change in circumstances. So the provision that stated that the range of income of Mr. Knight would be $600,000 to $1.6 million, with perhaps an increase only in 2015 due to the sale of assets to satisfy his requirements under the premarital agreement and marital settlement agreement, did not prohibit any type of a subsequent modification. And beyond that, did not in any way prohibit Mr. Knight from filing a motion for substitution based upon an increase in the value of the assets, or perhaps most importantly in this case, the astounding change in the lifestyle of the children. Because you've read it, you know it, the lifestyle of these children in terms of this lakefront mansion that they've moved into, the amenities involved. Your argument is twofold. It seems primarily to be based on the substantial increase in Robert's income, correct? It's really Robert's lifestyle. And the second part, which appears to be your secondary argument, is the lifestyle. Am I barely characterized? Okay. So, my first question is, are there any issues of fact here? Because it seems like there's really no issue of fact. Are there any? There are not. Next question. Would you agree then, I assume you would agree that the standard review is deniable because there are no issues of fact. Let me ask you this. Is there any issue of fact regarding the source of the additional income that you have invoked? I'm not sure of this, but it seems that it's all capital gains income from the sale of securities by the trusts. Is that correct? That is true, Your Honor, but the testimony at trial was that that is how Mr. Knight essentially makes his living. So, he testified that he sells appreciated assets. And so, his earned income is about $150,000 a year, and that he is, in essence, a full-time investor. So, you know, and there was no – I'm sorry. But does it matter for purposes of your analysis that this additional income derives from assets that the parties had agreed were non-marital and the judgment states that they are non-marital? No, because the law is clear that the characterization of assets, whether they're marital or non-marital, is not relevant to the amount of income one earns or receives for child support purposes. So, 505 makes no such distinction. Let me ask you, you agree that the standard is what the parties and the court contemplated at the time the judgment was entered, correct? The standard? The standard that guides this case is what did the parties contemplate at the time the judgment was entered? I don't agree that that is what guides this case. I think that what guides any motion for a modification of child support under Section 510 is whether there's been a substantial change in circumstances. Well, but it's got to be based on events that were contemplated and expected by the trial court at the time the judgment was entered. Isn't that what the marriage of Dirdow case says? Well, no. I think, Your Honor, that the question is, first of all, whether there were any contemplated events. Because oftentimes, I think in the majority of cases, a child support order is entered based upon the facts that existed at that time. And then under the old Section 510, which did not prohibit the consideration of contemplated events, the question is whether or not one could defend a motion for substitution by arguing that whatever change took place was in fact- Just to clarify, it's a motion for modification. Substitution is often used in terms of substituting judges. The motion for modification, correct? If I said substitution, I meant modification. Right. And thank you for that correction. So in a motion for modification, the question is whether or not there's been a substantial change in circumstances. And then what once was permitted to be argued, which no longer is, is whether or not the change was contemplated by the parties. And so in the de novo review of the marital settlement agreement, the question for the court is whether or not the change in circumstances, that is, the increase in the income, the increase in the value of the assets, and this enormous increase of the lifestyle of the children when they're with their father, whether or not those were contemplated events that would serve as a prohibition against the child support increase that we requested for the trial court. So let me ask you, this appears to be the crux of the issue. Obviously, Amanda understood that Robert was of substantial means. He had quite substantial wealth in his family trusts, and she presumably understood that he could access that wealth as and when he pleased. So when Robert caused his trust to sell appreciated securities and, you know, obviously recognized capital income at that point, isn't that something that Amanda knew and understood at the time the judgment was entered? I would say not only is that not the case, I would say that the plain language of the marital settlement agreement suggested otherwise, when it said that his income would be greater than $1.6 million in 2015 only, which suggested that it would not be the case that these capital gains would be great. He was going to sell securities in 2016 to fund the settlement. So, you know, you might say, well, that actually shows that he might have additional income down the road if he sells securities. Well, I wouldn't say that because the $600 to $1.6 million was from the sale of capital gains. And I believe that that provision, the only, from my perspective, a logical way to view it was to set a range of income so that a future court, if it was called upon to determine what the income was of Mr. Knight at the time of the entry of judgment, had a benchmark from which to determine whether or not his income is in fact increased. And I think that perhaps, you know, more, not more importantly, but important for the courts focus on is that while he commanded that wealth at the time of the entry of judgment, he didn't use it in a way that elevated the lifestyle of the children in such a drastically different way. And that's what really creates the disparity in the lifestyle of the parties. And when one looks at Section 510, Section 510 does not limit the finding of substantial change in circumstances to situations where income has increased. You have the cases that say that the court can take judicial notice of the change in the needs or the costs of a child as they get older. But when you look at Section 505A2, which is what the trial court was required to review in determining what, if any, increase in child support there should be, it provides an analysis of the lifestyle of the children should the parties have remained married. And so what happened here was that based upon this drastic change in Mr. Knight's decision as to how to spend his money, the chasm in lifestyle between his home and the children's mothers on Amanda's home, who has the children the majority of the time, was no longer within the same universe. And so the thing— I don't know that you've actually invoked this provision of the marital settlement agreement, but there is a provision that requires the parties on an annual basis to confirm that their income remains within the range specified in the marital settlement agreement. Are you aware of that provision? I am aware of that provision. What's the purpose of that? For Ms. Knight to know if there was a change in the income of Mr. Knight to be advised to file a motion for a modification of child support. Okay, so let me take a stab at trying to encapsulate your argument and you tell me whether I got it right or not. Your argument is that Robert's income was largely derived not from his annual salary as an engineer, but rather from the sale of securities and dividends based on the assets held in his family trusts. And that because the marital settlement agreement identifies a range of income that includes those sale of capital assets and it doesn't exclude—it doesn't specifically say that income from his family trust shall not be considered when, you know, considering a modification of child support, that even though Amanda knew he had substantial wealth and could sell securities, the terms of the marital settlement agreement do not contemplate this additional income. Is that—have I come close to summarizing? On that particular issue, that is the increase of Mr. Knight's income, I would agree with you. Okay. That it does not contemplate it, and the reason why it doesn't contemplate it is this very specific intentional exception for 2015, because otherwise there would have been no point in making that distinction between 2015 and any other year. The reason why— If the marital settlement agreement had said, and beyond 2015, if and when Robert chooses to cause his family trust to sell, appreciate securities. So, exactly correct. I mean, it easily could have been provided, you know, under basic contract instruction law, if it was intended to say that it's contemplated that Mr. Knight would incur capital gains in the future that might exceed the range that is contained within the marital settlement agreement, and that would not be a basis for an increase in child support. And the marital settlement agreement doesn't say that. So, excuse me. So, you filed a petition to modify in 2021. Is that when the cap was blown beyond the $1.6 million? We did not know what the income was specifically at the time that we filed the motion. And that's a very important point because what had changed, what we knew had changed at that time that mandated the increase in child support was this enormous change in lifestyle. It was the purchase of the lakefront home. It was the $100,000 private jet vacations. It was the private trainers and the personal golf lessons and all of the things that were never a part of these children's lifestyle prior to 2021. And so, that is why I mentioned that 510 is not restrictive in terms of what constitutes a substantial change in circumstances. And in a case such as this, a change can be triggered simply by how the support obligor decides to spend his money on behalf of the children when the children are with him. Because it creates that disparity that the law is intended to avoid. So, even if his income was within $1.6, do you still think that you have a basis to seek modification based on the process? Absolutely. Yes. So, let me ask you about this question. This change that came about in 2022 with compensation language in the statute, what's your view on that? Does it apply to this case or does it not? And please explain why. So, in retrospect, I think that both parties are incorrect in their positions with respect to the application of the amended act. And I think that the focus should have been on 801C. And I'm aware of this court's ruling in parentage of AH. And I believe that the reading of that statute, which provides that 801C shall apply to all modification proceedings that commenced after the effective date of the act, should have applied to this case. Because the legislature could have said that it would apply only if the case had been filed. Meaning that the old statute would apply only to cases that had been filed prior to the effective date of the act. Instead, it makes reference to the commencement of the proceedings, which I believe the plain language refers to the inducement of evidence. But I'm also suggesting that regardless of whether or not you apply the amended 510 or the former 510, the results should be the same. And the manifest weight of the evidence establishes that there was a substantial change in circumstances here. Sorry, just one quick question. When you said earlier that this is a de novo review, you didn't really mean that, did you? It still manifests weight and discretionary within the court's description to determine whether there's an appropriate modification or substantial change. Let me clarify. So clearly manifest weight as to whether or not there was a substantial change. Clearly abuse of discretion in denying or granting the motion. But in review of the marital settlement agreement itself, which is the only evidence that was presented as to whether or not there were contemplated events, that is a de novo review. My question is, with regard to the word proceedings and the amended statute, seems to me it's ambiguous. You said you believe what proceedings is directed at. Do you have anything to base that on? Yeah. So when I was researching that issue, the reason that I landed at that conclusion is that under the Civil Practice Act, the commencement of an action is the filing of the complaint. And the black law's definition of a legal proceeding is one that appears before the court. That's the online version of the black law definition. I looked it up, too. And so based upon that distinction between the Civil Practice Act and the plain, ordinary meaning of a proceeding, I believe that the current 510, which disallows the consideration of contemplated events, should and ought to be applied to this case. My next question has to do with the discovery issue. Yes, sir. In light of the judicial admission that's discussed, in which Robert's lawyer said that he admitted he's capable of paying whatever reasonable amount the court orders him to pay, why do you need the discovery? We need the discovery because under 505A2, the financial resources are required to be considered by the trial court in making a determination, both as to whether there's been a substantial change and whether child support should be increased. Doesn't the judicial admission take that issue out? That's the purpose of a stipulation or judicial admission is to take an issue out. So, yes, it's an issue, but it's been taken out. So, again, what would you – what possible use of that discovery is there in light of their judicial admission? Number one, it's a matter of magnitude because without knowing specifically the amount, that could very well change the court's view as to whether or not there's been a substantial change. Number two – But the judge said he wasn't going to take into account the ability to pay. And by doing so, he read that mandatory factor out of 505A2. But the mandatory factor if it's still an issue. If somebody has enough money and says – you know, you don't have to have every issue before the judge, right, even though it is an issue. Nobody say it's not an issue. But if that issue is taken out, if we agree with the position of Robert in what the judge said, I'm not going to consider it a matter of ability. Again, why go through all this for what? What are you going to find? That he has more money than he says he has or – Well, and by the way, that could be meaningful. And what I think that does is it improperly – How is it meaningful? I'm sorry? How is it meaningful? Well, let's assume that it's 80 million instead of 40. It doesn't matter what it is, yeah. And, you know, I don't know. Maybe to you that is irrelevant. But, you know, I believe that when there is an increase to that magnitude, and I think that that really should influence the court in determining whether there's been a substantial change or whether or not there should be increased child support. And I'd point out that this was not a stipulation. I think the parties are – I didn't say stipulation. I said judicial admission. I know you did. And I think the parties are free to stipulate, but I don't believe, particularly under Supreme Court Rule 201B, that allows parties to have full discovery that it's error for the court to accept the judicial admission of this kind to thwart the actual facts to be considered before the court. We don't know what we – Any case law in there? Only the general law. There is no case law that says, you know, you can – you still have that right. So, again, that goes to the question of whether it's necessary. And even if it's 40 million or 80 million, in this situation, it's not going to make that much of a difference because your argument isn't that. Your argument – there's enough – the question is the lifestyle, the two lifestyles, which goes to another issue. The last issue, Judge Taylor, is the issue of the experts and the failure to take a order of proof. So, again, with regard to the experts, what is the effect to you that not having had the offer of proof and what were they going to show that now you don't have the ability to do? So, Your Honor, in – if you review parentage of AH, the Verhines case, NREG-KEON-C, marriage of Bossie, among others, they all consider the differences in the households in whether or not to modify support. The condition of the home where the children live, whether there's repairs required, whether there's improvements that would be appropriate. And by barring those experts and prohibiting Amanda from testifying to them at trial and then denying an offer of proof, the court did not consider relevant information, relevant evidence that this court has determined to be relevant. And it's ruled upon – the parentage of AH, one of your bases for affirming the increase in child support were the observations that you made between the difference in the households in which the children lived. So, it was per se abuse of discretion to deny that evidence from being introduced. Thank you. Mr. Avis, we're obviously far over time, but I do have a couple of questions that I do want to try to get answers to. If Robert had simply done nothing and not sold securities and his income remained within the range, putting aside for the moment the lifestyle argument, would you have a basis to modify child support? No. And so, in a way, Robert might argue that he's being penalized for using his non-marital assets. I would disagree. And I would say that Robert made a decision to elevate the lifestyle of the children, which was his discretion to do, and by doing so, created a vast disparity of the activities that the children can take place in when they're in his care that his mother cannot. It's not so much the activities, right? It's really just where they live, right? They live in a lakefront mansion. Presumably, the activities would have been whatever Robert wanted to provide to them. Look, I think that just describing it as a mansion doesn't take into consideration the professionally designed gym and the sport court and the pool overlooking the lake and the insulate bedrooms that they participated in designing and the private jet vacations and the golf trips to Scotland and the personal trainers and so on and so forth. So, I think it's a little too narrow to simply say that he bought a larger home and that was the basis for a substantial change. I'm not saying that that was exactly what you said, but I think that he made a decision to substantially change the lifestyle of the children, and it warrants the relief that we requested. Of course, Amanda knew and understood that Robert could provide far more than Amanda could provide for the children. But the issue, though, Judge, is that during the marital lifestyle, that wasn't the case. And so, I don't believe that there is a scintilla of evidence in this record that would suggest that she would have any notion that he would use his money to elevate his children's lifestyle to the extent that he did. Any more questions from the panel? Yes. You're asking, am I correct, you were asking for $30,000 a month? The request was $20,000, $25,000 a month, Your Honor. And in your estimation, that would be the grant that included all the reasonable and necessary expenses for these children, $25,000 per month, correct? That is correct, Your Honor. And so, getting back to Justice Hyman's point, we have Mr. Knight saying, I can afford it. I don't think I should have to pay that much because I do not think those expenses are reasonable or necessary. But if the judge ordered me to pay $25,000 a month, I could do it. So, Mr. Knight, in his briefs, calls it a stipulation. He then refers to it as being intended as a judicial admission. So, let's assume he sticks by that. Do you still need a discovery pertaining to the truck? Because if Mr. Knight has $40 million or $100 million, what difference does it make? Child support is not a windfall, and you have said it's $25,000 a month. That is correct. And I only believe that because 505A2 mandatorily requires the consideration of the financial resources of the party, the order of magnitude could matter. I understand what you're saying, that what difference would it make? But I think that, you know, since we're talking about a decision that's within the discretion of the court, I don't know what particular judge, what this judge would have done if he knew that it had grown from $40 million to $80 million or $100 million. And by depriving that evidence from being produced, I could not make the argument that I'm making to you. Okay, thank you, Mr. Adas. Mr. Chancellor. Let me first address what Mr. Adas says was his strongest argument and do that in the context of the two rulings this trial judge made. The trial judge first found that Amanda had failed to demonstrate a substantial change in circumstances under Section 510. And he also found that she did not show that the needs of the children were increased, requiring an increase in child support under Section 505. Now, the argument Mr. Adas makes relies heavily, in fact, almost entirely on a reading of Section 510 and its amendment that is clearly wrong. And what I mean by that is Section 510 was amended in 2022. And we know what it says. It says that if you have a foreseeability of future events, the fact that the events were contemplated is not a defense to a substantial change in circumstances. But here's the important language of that statute. It says, unless the substantial change which is contemplated is expressly set forth in the agreement. Let me state the obvious here. There was no way in 2015 when Rob and Amanda got divorced that they would have known that the statute was going to be amended in seven years and would require them to set forth every way in which they anticipated the future needs of their children would be met. It would be wildly inappropriate to now, in 2022 or 23 or 24, on a 2021 filing, on a 2015 divorce, to require them to have known in 2015 all the circumstances that they would set forth and they would anticipate. But they did. Look at what they did in this judgment. Robert not only pays $10,000 a month, he pays 100% of healthcare premiums. You don't have to read the agreement. I mean, we know what's in there. We've read. Well, and what that means is all the anticipated needs of the children and all the ways in which those needs would increase over time were already dealt with and contemplated in the 2015… But that's not his argument. I mean, you're overstating, I think, the intent of his argument was, as I understood it, was the emphasis was on the disparity in lifestyles and the reduction in the home of Amanda and what Amanda could provide when the children were with her as opposed to with Robert and what they became accustomed to in his house. In her house. And, you know, so I, you know, that to me doesn't get us anywhere, what you're saying. I don't see where that gets us. But what's your point? My point is this. Is if, in fact, in 2015, the parties had known that they were required to identify all the ways in which their circumstances could increase and change over time, they would have put into this agreement the fact that Robert was going to pick up 100% of their educational expenses. And Robert was going to pick up 100% of their medical expenses. And that those were changes to the lifestyle of the children that were anticipated by Robert. That's a normal type of situation in a case like this. That doesn't surprise anybody. Considering the difference in income. So I don't understand. Again, I don't know where that's getting you. So you're saying what? What's your bottom line there? My bottom line is that in addition to the $10,000 a month, he now pays $39,000 a year for the children to go to private school. That was contemplated. That was contemplated. That's right. Well, that was contemplated. Excuse me. Go ahead. Your Honor, it was contemplated, but it wasn't set forth as expressly contemplated in the 2015 judgment because they didn't know about the amendment to the statute. If we are past the argument that Mr. Adas made at the trial and in his briefs, if we are past the argument about whether or not the 2022 amendments apply to this motion for modification, then I will move on. You can move on because whether you are or aren't, I mean, we'll make that decision based upon the briefs and what you just said and what Mr. Adas said. But it could be that either way, it doesn't really make a difference when you get to the final decision. Either way, we can move on. The only place I would add something that was not in the briefs is that Mr. Adas has a new interpretation of the amendment and Section 801 of the Illinois Marriage and Dissolution of Marriage Act. And there was a case decided last summer addressing Section 510 in the 2nd District, which is the location that first had this issue in the Bennett case, which was cited with approval in the 1st District in the in-ring marriage of AH case. And this case last summer decided that the amendments to Section 510, very amendments we are addressing in this case, do not apply if the motion for modification was filed, even just filed, not heard, filed just days before the effective date of the statute. So, that case was not put in our briefs because it wasn't decided until August last summer, and it is a 23 case, but I think it's very persuasive because it's the same issue that was addressed in Bennett and in-ring AH, but applied to this particular statute. What's the name of that case? The case is in-ring marriage of SVEC, and the citation is 2024, elapsed 2nd, 220461. When was it decided? August, I believe. It was last summer. It was after the briefs in this case were filed. But the appellate court, you said it was 2024? That's correct. Mr. Chancellor, in your brief, you say there was, Robert stipulated that he could pay whatever child support the court determined is appropriate. You go on to say that your client intended the stipulation to be a judicial admission as to its ability to pay. Do you and your client stand by that? Yes. That if the court ordered him to pay the $25,000, he could afford to pay it, and he will not challenge his ability to pay? That's correct, Your Honor. He would not challenge that award based upon his ability to pay, which was judicially admitted. If it was $50,000 a month, would he challenge on ability to pay? Not on an ability to pay. I think there might be other grounds, of course, to challenge it. And, Your Honor, that exact question was asked by the trial judge during the hearing on the case, and the same answer was given. Mr. Chancellor, if I could move you to part of the case. Sure. Let's assume, for sake of argument, that the amended version of the statute does not apply. So the question is, what was contemplated? There's a provision in the marital settlement agreement that requires the parties to confirm on an annual basis that their income remains within the range specified. What is the purpose of that provision? I think the purpose of that provision is to keep each party familiar with the financial circumstances of the other in case there is something that warrants a change. It's typical in settlement agreements. We do them many times. I don't know. I wasn't involved in the original agreement, so I did not negotiate it. I think that's a typical type of provision to keep the parties from having to speculate about the financial circumstances of the other. So your opponent argues that the substantial increase in income, which there appears to be no dispute, is derived from the proceeds of the sale of securities held by the family trusts. That constitutes a substantial change of circumstances not contemplated by the parties. And they point, well, I don't know if they do, but the provision in the marital settlement agreement that requires confirmation on an annual basis supports that. What's your response? I don't think it supports that, and I do believe that there was, in fact, no real evidence of a substantial increase in either the value of his assets or the income that he reports. You could share your take on it. We're not really talking about value because we don't know on this record. What we do know is that there was substantial additional income that flowed from capital gains, as I understand it, from the sale of securities, appreciated securities. And so there's no dispute about that. Why, then, is there not a substantial change in circumstances? Well, because that's only one, first of all, I think that that is a cherry-picked year. You can pick any year, and if he sold stocks in that year, then he may have had an additional income reported on a tax return. But to point out the obvious, that means he also no longer owns that asset. And so there really isn't a change in his financial circumstances. He sold an asset, he reported a gain, and he no longer has that asset. Well, net worth remained the same. His net worth was the same immediately before and immediately after the sale of the security. But there is a recognition of capital gains income. And there's a provision that says you've got to confirm your income every year. And the only reason I could contemplate in my head about why the parties agreed to that is because they contemplated that there may be some basis to modify the child support if the income is outside the range specified in the agreement. Why is that not a reasonable interpretation of what the parties agreed to and contemplated? Because I don't think that in either instance, even if his income went up, even if his income was reported to her as having gone up, even if he sold assets in order to generate that income, that his financial ability to pay child support was ever meaningfully altered. It wasn't even that it was not a substantial change. It was no change whatsoever. In 2015, when they got divorced, he had the ability to pay any reasonable and appropriate amount of child support. In 2021, when she filed her motion to modify child support, he had the financial ability to pay any reasonable child support. This isn't an issue of ability to pay. I don't understand how this issue has to do with ability to pay. This issue had to do with the change of circumstances regarding the children. It was a different situation starting in 2021-22 than it was in 2015. If it was not contemplated, nobody knew he was going to have this mansion on the lake with all the facilities and the jet and everything else. That wasn't there. You're mixing apples and oranges. Let's talk about that. What you seem to be saying is maybe he should get all that discovery because you're saying that discovery is relevant. Not the ability to pay, but apparently it's relevant to a change in circumstances because you're saying there was no change in circumstances. If that's true, then he needs that discovery to show, yeah, there was big time. He bought this million-dollar house. He spent all his expenses. This is where it's coming from. Maybe he should get all that discovery. The discovery was not addressed. The discovery was I want the general ledger from the trust accounts. The discovery was in much greater detail. The discovery was almost as if you were doing a divorce de novo. I don't think given the offered stipulation, which we'll call a judicial admission to be more precise. Let's see. Do you agree it's a judicial admission? Absolutely. Okay. So let's not call it. It is a judicial admission. Yes. We called it a stipulation at one point, and I understand that's not precise and it should be called a judicial admission. We offered the stipulation, and it wasn't accepted. In any event, given that there was an ability to pay, an increase in his income alone is not really a substantial increase. It's not a substantial change in circumstance. That's not his argument, is it? That's not his argument. I mean, DeVries doesn't say that. Everything he just argued doesn't say he's asking for more money because Robert has more money. No. He said that the house has deteriorated. He wanted to put on experts to that and couldn't do it. He says that the children are treated much differently at the father's house and the mother's house. I mean, they're treated royally in one house and much different when they're with the, most of the time, with the mother. So that's the issue here, right? I don't think that is a legal issue that a mandate can prevail upon because I don't. That's not what we haven't had a trial on it, really, because the offer, there was no offer approved, which could be reversible error in and of itself. Your Honor, I disagree. There was an offer approved. No, they didn't let him put on the offer. They didn't let him put on the offer. No, there was an offer approved. She made an offer approved. She testified about the repairs she wanted to make to her house. Not the experts. I'm talking about the experts. The experts were not allowed. They wanted to have the experts so that would be preserved. The judge said no. Am I correct? Yes, you're correct. What? He granted the motion in limine to keep them from testifying. You're right. The subject of their testimony was something that was identified at trial so that it could be preserved in the record. Well, that's not the same as preserving what the experts would say. They read the invoices into the record, Your Honor. She showed photos. It's still not the same. I mean, but in any event, isn't that really the issue, the difference in the way the children live and are treated in the two homes with regard to one being quite wealthy and the other not? Well, I don't think it's fair to characterize as Amanda is not wealthy. As you can see from the things we identified in the brief, she's a millionaire and she lives in a million-dollar home. And the judge continued throughout this case to ask her for some legal support for the provision that if, in fact, Robert was obligated to pay child support to her, to pay for the repairs to her deck. Over and over again, the judge asked her to give him case law that supported her view that Robert's child support obligation included the obligation to upgrade her home. He even put it in a court order. On October 31st, the judge entered an order in this case stating the court has requested that case law be provided to him, which supports Amanda's request that Rob contribute to her claimed home repair before the hearing date. She failed to do so. There is no such case stating that. And that was the crux of their case. And the crux of the defense was simply show us the needs that the boys have that are being unmet. Tell us what they are. And there were no such needs. And it is quite clear under Illinois law that even if somebody has an opulent lifestyle, that doesn't require an opulent lifestyle to be provided to the other. That's assuming they proved an opulent lifestyle. And you can see where that would lead. I bought a new house. The spouse gets a new house. I bought a new car. The spouse gets a new car. That's the case that they presented. And that's the case that they tried to prove. And until she gave case law to the judge saying the repairs to the house are part of the child support obligation, he did not allow any additional evidence on that issue. Having a great deal of evidence on that issue, he had, just so we have the record provided, she testified about the repairs. She told us what she needed to do. She told us about the cost. She read invoices into the record, and she showed photos of what she wanted to repair on the deck. That was the offer. Did she testify about the estimates that she had received to do the repairs and upgrades? Yes. She testified. She read the invoices into the record. So there was preserved what she was going to prove or try to prove in the event that she was allowed to do so. The experts who were, by the way, they were belatedly identified. They were of questionable expertise. But what they were going to testify about was preserved in the record. Mr. Chancellor, you're saying that she was going to use this money to repair the house. When Mr. Ada said we were asking for $25,000 a month, where did this fall in the disclosure? So if she fills out a financial affidavit saying, I need $25,000, here are the reasonable needs and expenses, where did this get wrapped up? I don't think it was in there, Your Honor. I will point out, and I don't want this to suggest that we have to limit her to her stated needs. But the stated needs for children in her Rule 13 financial affidavit was $3,400 per month. Once again, the judge continued to ask her, with respect to the needs of the children, in what way is the $10,000 not enough? In what way is the fact that he pays all the education and all the medical and 75% of the childcare and extracurricular activities in camp, in what way is that not enough so that the 25% you pay, you have insufficient funds for? And she never had an answer to that. In fact, she testified in cross-examination that the needs of the children were essentially met. So I don't know where the cost was in place in her financial affidavit. I think it was probably, it wasn't listed in the children's expenses. It was listed under her household and personal. Mr. Janser, if I understand your argument correctly, you said earlier that there was not a substantial change in circumstances because Robert could have paid any amount of child support, or any reasonable amount of child support, when the judgment was entered, including amounts above $10,000 a month. Because none of that has changed, that there is no substantial change in circumstances. Is that correct? That is correct, Your Honor. And just to be a little more precise, there's certainly no substantial change in circumstances in terms of his ability to pay. And you had argued, well, I had raised with Mr. Adas earlier the fact that this additional income in 2020 and 2021 derives from capital gains from the sale of securities held by the family trusts. You are not arguing today that the source of that income matters for purposes of our analysis, are you? Do you mean the fact that it is his non-marital asset? Yes. I am not arguing that. It was his non-marital asset before it was awarded to him as such, and it stayed that way. Do you have anything else you want to say? Your Honor, only one other thing, and that is that with respect to the standard of proof and the standard that this court must find, the two findings that the trial judge made, one, that she did not show a substantial change in circumstances that was unanticipated at the time of the judgment under Section 510, and that secondly, she did not show any increase in the needs of the children required for an increase in child support. Both of those findings are correct, and the appeal has to be based upon an abuse of discretion standard. And I know you understand fully how high of a standard that is. It requires the appellate court to find the trial court was acting arbitrarily, without conscientious judgment. Let me ask you, you do know the standards, but in history you didn't say that the substantial change question is manifest when it's not. I think that's incorrect with respect to the findings the judge made. The findings he made are based upon a substantial change in circumstances, which is his determination to make as the discretion of the trial judge. Moreover, the place that Mr. Adas made the argument had to do almost entirely with procedural arguments, such as requesting additional discovery or the motion in limine, or the fact that the offer of proof was not structured the way Mr. Adas wishes to structure it. All of those are abuse of discretion standards without question. And you cannot argue that you both simultaneously proved your case and were prevented from proving it. The fact is that under those, the abuse of discretion standard, all those procedural rulings that Judge Johnson made were correct. Mr. Janser, Mr. Adas argues in his brief that the court can presume that the cost to meet the needs of children increase as they get older and become teenagers. And I don't know whether I don't think he's really argued this aspect of costs, but, you know, we've gone through a period of extraordinary inflation. And, you know, a dollar in 2015 doesn't get you nearly a dollar in 2024, coming up in 25. Is that something that we ought to consider in our analysis? He may not have argued that today, Your Honor, but he certainly did argue the increased needs of the children over time was a factor in seeking a modification. But, and this is why I emphasize the anticipation of foreseeability and that the amendment that was passed in 22 does not apply. Of course, children get more expensive when they become teenagers. But in all the typical ways that they do, that expense in the original judgment here was assigned to Robert. They're more expensive to educate because now they go to private schools, Robert. They have more expensive medical because they have orthodontia or other health needs, Robert. Even 75% of the extracurricular activities or daycare when they're with mom or summer camps, all the ways in which those children get more expensive was already anticipated and assigned to Rob. They knew that in 2015, so that in 2021, it shouldn't be the basis for an increase in child support because it was already anticipated, which is why that amendment matters. It doesn't apply. But each, aside from those expenses, all the other expenses were borne by the Amanda and Robert when the children are with them, right? And Amanda has far less ability to meet those increased expenses and cope with extraordinary inflation than Robert does. That was addressed in two ways. First of all, it was not set forth in no way that Amanda ever proved that there were expenses that the children had now that because of inflation or any other factor that she was unable to meet. She was asked that question repeatedly by the judge, by the attorneys in the case, and she never had an answer. In fact, in cross-examination, she said that their needs were being met. There was never a suggestion that I can't pay the increased cost of food based upon the $10,000 a month in child support I get. The judge asked her that repeatedly. What is it that you can't afford to pay because the $10,000 isn't enough? She had no answer. Okay. Thank you. Any questions of Mr. Janser for the panel? Thank you, Mr. Janser. Thank you, Your Honor. With respect to the last argument that Mr. Janser made, it goes to the heart of the error that the court committed, which was to make this a needs-based analysis. And so he was disinterested in hearing any evidence about the lifestyle. And when the questions were asked of Ms. Albert as to whether there were any needs, that is, the ability to feed the children, to clothe the children, to house the children, were their basic necessities of life met? They were. And were there demonstrable increases in those basic necessities of life? There were not. And for 40 years, that has not been the law in child support in this state. And so when you read out the lifestyle of children, have the marriage continued from the act, you have this prehistoric view of a child support modification proceeding. And this, by the way, also goes to the issue as to why discovery as to the resources of the parents are important. Because this judicial admission changed the burden and put Ms. Albert in the hot seat to say, establish what your children don't have that they need. And that's not the law. And that's what the court did and that's what Mr. Janser did. How are the documents going to help you do that? I don't see how those documents help establish that at all. That is something you need to establish independently of those documents. I will take the reference to the document out of that argument. Because the key is that in the very order that denied the motion, it found that there was a failure to prove an increase in the needs of the children. And that is not the law. It is a narrow reading of 50582 that makes no reference to lifestyle whatsoever. And so when Mr. Janser, you know, suggests that there was testimony conceding the point, he's not talking about any of the discretionary expenses that Mr. Knight not only has the ability to provide, but does provide, that she can't. So it is a intellectually dishonest argument. So if I understand where you two are different, see if this summarizes it, is that Roberts counsel is talking about needs. You're talking about lifestyle. And the judge talked about needs, not lifestyle. So this case is about something that was not decided by the court, should have been decided because it's part of the law and necessary, and that is really the crux of the issue. I agree with that statement. And I'd also point out to you, because we have the opportunity just to quickly pull up this case, which is an unpublished Rule 23 decision. And as far as I can tell, what it holds is, which we already know, that 803A doesn't apply. And that is the portion of the statute pertaining to pre-decree divorce cases. Although I don't want to say anything more about it, because I haven't read it, but I just noticed that it's a Rule 23 unpublished decision, and Mr. Janssen did not mention that to you. Mr. Adis, it seems to me that it was clear to everyone that Robert was always going to be able to provide the children with a much more or a much higher lifestyle than Amanda was, simply because of his enormous will. And he did, right? It was a lifestyle that was beyond what Amanda and Robert enjoyed at the time of the marriage. But again, this is something that she would have known. And so why does that, you know, constitute a substantial change of circumstances when it was contemplated? Well, I don't believe that it was contemplated, and I think that there was no evidence that it was contemplated, because during the marriage, and for seven years subsequent to the marriage, there wasn't this astounding difference in lifestyle. So I don't think that one could conclude, based upon the record before the court, that there was any indication that the children would be living in the opulence they are with their father in comparison to the way that they lived with their mother. Because that wasn't the way he spent his life. Right. Because Amanda and Robert didn't spend Robert's will in a way that Robert and his new wife have spent as well, we ought to be looking at historically the way they, the lifestyle from a historical perspective. Is that your argument? No, because the statute states that it's the lifestyle that would have been enjoyed had they remained married, so it's not limited to that period of time. I look at it just slightly differently. The nuance is, it's the money that he's spending on the children. It's the money that he's spending that affords them activities and lifestyle and a home with amenities that they've never had before in such a drastic disparity that mandates the change. I'm not suggesting that any wealthy person that has a more expensive home or does more expensive things with their children warrants a change in child support. I'm saying that this was a complete sea change, total sea change in the way that these children live. And because we have the law that we have that states that children should not live in opulence in one home and live in comfort but not the same way in the other home where there is the ability to provide for those expenses that promote the best interest of the kids. So they have some semblance in both homes. I'm sorry. What evidence were you unable to present regarding that sea change, if any? I think that the sea change is evident, and I think that I asked a series of questions of Mr. Knight at trial whether or not he ever had any of these things previously, and the answer was no to each and every one of them. So, again, it goes back to the whole concept of lifestyle not being considered. Yes, sir. Your argument seems to have pivoted somewhat from the briefs, because in the briefs you tend to concentrate on the additional income, whereas today you sort of emphasize more of the lifestyle aspect of the case. Am I correct in that observation? I would say the answer is no. There still was a substantial increase in the income. But because Your Honor, in particular, had questions about whether or not it mattered that he was receiving more capital gains in 2022 than he did in 2015, you know, I didn't want to lose sight of the fact that I truly believe that in the absence of an increase in income, in the absence of an increase in assets, in this unique set of circumstances, when a parent who always had the ability chooses to just explode the lifestyle of their children, that Section 510 doesn't limit the circumstances that can lead to a finding of a substantial change. It doesn't have to be an increase in income. It doesn't have to be an increase in assets. It doesn't even have to be an increase in the needs of the child. It can be that element of 505A2, the lifestyle of the children, that mandates or that justifies the finding of a substantial change that then leads to the determination as to what the increase should be. So I'm not abandoning the income argument in any way. I'm just emphasizing how that lifestyle change, in and of itself, constitutes a substantial change. And from a policy perspective, I think that that's exactly the way that the law should be read. Any more questions of Ms. Dredis? Ms. Dredis, could you give us a sampling of those expenses that your client's responsible for 25%? She is responsible for 25% of the activity expenses of the children. And I know that without the record in front of me, it's car expenses. I don't know that the kids are attending camp anymore. You know what? I do not want to guess in front of you. I know that if I went back into the record, I could provide it to you. But there is an increase in those shared expenses. Does it include sports? Does it include health clubs and that sort of thing? It doesn't include health clubs because I think that they've, in essence, have separated those things. And Rob's position has been what I provide for in my home is my responsibility. And if you decide to do it in your home, you can do the same. So one of the things, for instance, that we argued for as part of the increase in support was the ability for Ms. Alper to join a club that would have golf and swimming so that she could have those activities during her parenting time because the kids don't have access to that at her home. So, you know, I hope that that's a coherent answer. But that's the crux of the argument, that all of these new things are things that she doesn't have access to when the kids are with her. Any more questions? Okay. Mr. Adas and Mr. Janser, thank you for your arguments this afternoon. We will take the case under advisement and issue a decision in due course. Thank you very much for your time this afternoon, Your Honors. Thank you, Your Honors.